ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III-ESPECIAL

| | | |
|---|---|---|
| RICHARD MACHADO ORTIZ<br><br>*EX PARTE* | KLAN202301040 | Apelación procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores de Bayamón<br><br>Civil Núm.: BY2022RF01812<br><br>Sobre: Petición de Incapacidad y Designación de Tutor |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz y la jueza Mateu Meléndez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 29 de febrero de 2024.

Comparece el señor Richard Machado Ortiz, en adelante el peticionario o el señor Machado Ortiz, quien nos solicita que revoquemos la *Sentencia* emitida el 4 de octubre de 2023. Mediante la misma, el Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores de Bayamón, en adelante TPI, desestimó la petición de incapacidad, en adelante la Petición, presentada por el peticionario a favor de su padre, el señor Richard Machado González, en adelante el Doctor Machado González o el peticionado, y le impuso honorarios de abogado.

Por los fundamentos que expondremos a continuación, se acoge el recurso como uno de *certiorari*, se expide el auto, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera

Instancia para la continuación de los procedimientos conforme a lo dispuesto en la presente *Sentencia*.

-I-

En el contexto de un pleito sobre una *Petición de Incapacidad y para Designación de Tutor*[1], el peticionario aseveró que sus hermanos, la señora Norma Machado Ortiz y el señor Ricardo Felipe Machado Ortiz, en conjunto los apoderados, han incurrido en prácticas de explotación financiera y han privado a su padre, el Doctor Machado González, de los tratamientos médicos que necesita. Alegó que, desde antes de la otorgación del poder duradero, el Doctor Machado González no está capacitado para administrar sus propios bienes. Además de la declaración de incapacidad judicial, solicitó el nombramiento de un tutor provisional, que no sea integrante de la familia Machado Ortiz, mientras se dilucida la incapacidad de su padre y hasta que se nombre a un tutor en propiedad.

El señor Machado Ortiz destacó, a su vez, que está impedido de proveer una evaluación médica, objetiva y completa, sobre las condiciones de salud que padece el Doctor Machado González porque los apoderados le niegan esta información y tampoco comunican las veces en las que el Doctor Machado González ha sido hospitalizado en condición crítica. Por consiguiente, el peticionario recomendó a una psiquiatra y a un neurólogo de su preferencia para realizar la evaluación de la presunta incapacidad. Finalmente, solicitó una orden para paralizar el ejercicio de las facultades otorgadas a los

---

[1] Apéndice del peticionario, págs. 857-871.

apoderados, la señora Norma Machado Ortiz y el señor Ricardo Felipe Machado Ortiz.

Por su parte, el Doctor Machado González presentó una *Moción Solicitando Desestimación del Caso*.[2] Alegó que el señor Machado Ortiz intenta nuevamente incapacitarlo, a pesar de que el TPI concluyó que en nuestro sistema de derecho se presume la capacidad mental y el peticionario no pudo controvertir esa presunción. También indicó que, conforme resolvió el foro primario, la Petición del señor Machado Ortiz, a los efectos de que varios médicos lo evalúen, "parecía más una expedición de pesca o un ataque colateral al Poder Duradero otorgado… a favor de sus otros dos hijos". Así pues, adujo que el TPI determinó que un informe en el que se indica que el Doctor Machado González padece Parkinson no es suficiente para someterlo a una batería de exámenes médicos. En todo caso, el foro primario entendió que eso sería una intromisión indebida sobre su persona.

Por otro lado, arguyó que, aunque en los casos de familia los asuntos no advienen finales, esta normativa no aplica al pleito de epígrafe "[s]alvo que tales procedimientos de la jurisdicción voluntaria se conviertan en asuntos contenciosos…". Enfatizó que solo el primer caso de incapacidad, que presentó el peticionario, fue contencioso y el foro sentenciador lo desestimó. Argumentó, además, que el Tribunal de Apelaciones definió la ley del caso cuando emitió una Resolución el 10 de noviembre de 2021, tras atender las mismas controversias y los

---

[2] *Id.*, págs.796-809.

mismos hechos. Según el foro intermedio, el Doctor Machado González otorgó la Escritura Núm. 4 sobre poder duradero, la cual goza de validez, y de la misma escritura surge que se le explicó al otorgante que el poder duradero se mantendría subsistente y válido durante todo el proceso de su enfermedad incapacitante o de ser declarado incapaz judicialmente para administrar sus bienes. Así pues, el peticionado solicitó al TPI: desestimar la Petición del señor Machado Ortiz por constituir cosa juzgada, impedimento colateral e ir contra la ley del caso; sancionar la conducta temeraria, irrespetuosa e impertinente de la parte; y emitir una orden para el pago de honorarios de abogado.

Con el beneficio de la comparecencia de ambas partes, el TPI determinó lo siguiente:

> [E]l peticionario no presentó prueba médica alguna que derrotara, ni al menos de manera *prima facie*, la presunción de capacidad que establece el Código Civil en su artículo y que discute la jurisprudencia aplicable a los efectos.
>
> […]
>
> Mas aún, el peticionario, Sr. Richard Machado Ortiz, presentó el mismo documento que unió a la petición del caso civil BY2020RF1044 que YA FUE ATENDIDO Y RESUELTO por este mismo Tribunal, del cual se recurrió en alzada al Tribunal de Apelaciones y al Tribunal Supremo y a la fecha ya fue dispuesto en su totalidad denegando el mismo. Se trata a claras luces de una controversia que ya fue adjudicada por el Sistema Judicial de Puerto Rico. Es un asunto final. No tenemos dudas de que se trata de que hay cosa juzgada y más aún impedimento colateral por Sentencia.
>
> […]
>
> El petitorio del Sr. Machado Ortiz era que se ordenaran evaluaciones por médicos de su selección, pretendiendo, igual que en el caso anterior, que se iniciara una expedición de pesca (fishing expedition) para sustentar sus alegaciones.
>
> […]

Tampoco nos convence la alegación hecha por el peticionario, por medio de sus abogados, a los efectos de que en el caso anterior no se dictó Sentencia y que por ello no aplica el impedimento colateral, o que en caso anterior el Tribunal no atendió la controversia, todo lo contrario. Este Tribunal examinó y leyó la detallada Sentencia dictada por este Tribunal, la cual atendió y resolvió todos los asuntos planteados y que, aunque se recurrió en alzada NO fue revocada. Una lectura minuciosa tanto de la Sentencia de este Tribunal, como de la Resolución del Tribunal Apelativo, contienen [*sic*.] todo el tracto de los eventos que tuvo ante sí este Tribunal en el caso anterior, donde a claras luces surge que se trató de una asunto altamente litigado, con gran cantidad de mociones y solicitudes de órdenes, sustenta nuestra conclusión que se trata del mismo petitorio, con los mismos hechos, la misma prueba y que nos inclina a desestimar su caso.

[…]

El Dr. Machado González otorgó una escritura de Poder Duradero el 2 de julio de 2020, suscrito ante la Notario Anne Marie Huertas Solares mediante la Escritura Núm. 4. En la referida escritura el Dr. Machado González, (poderdante) designó a dos de sus hijos, Norma y Ricardo Felipe Machado Ortiz como apoderados, para administrar sus bienes, con el propósito de garantizar que, en el caso de alguna enfermedad o incapacidad, continúe la operación de sus negocios y actividades comerciales a la vez que se le provean los recursos necesarios que garanticen buena calidad de vida, salud, comodidad y atenciones médicas y hospitalarias.

[…]

A nuestro entender, dicho instrumento otorgado sustituye el procedimiento de incapacidad presentado, ya que regula por sí mismo lo concerniente a la administración y enajenación de sus bienes por lo que no existe un caso o controversia que el Tribunal tenga que atender, así como, además deja la petición de autos de exponer una reclamación que justifique la concesión de un remedio.

[…]

Por lo que, este Tribunal determina que procede la imposición de $2,000.00 por concepto de honorarios de abogado a favor del Dr. Machado González a ser pagados en un término de 30 días.[3]

---

[3] *Id.,* págs. 111-120.

En desacuerdo con la determinación, el peticionario presentó una *Moción de Reconsideración*[4], que el TPI declaró no ha lugar[5].

Aun inconforme, el Doctor González Ortiz presentó una *Apelación* en la que invoca la comisión de los siguientes errores:

> EL TPI ERRÓ Y ABUSÓ DE SU DISCRECIÓN AL EMITIR SENTENCIA DESESTIMANDO LA CAUSA DE ACCIÓN BAJO LA REGLA 10.2(5) DE PROCEDIMIENTO CIVIL AL APLICAR LA DOCTRINA DE IMPEDIMENTO COLATERAL Y SIN TOMAR COMO CIERTAS LAS ALEGACIONES DE LA PETICIÓN.

> EL TPI ERRÓ AL IMPONER REQUISITOS INEXISTENTES Y ONERESOS [*SIC*.] AL APELANTE CON RESPECTO AL PROCEDIMIENTO DE DECLARACIÓN DE INCAPACIDAD Y NOMBRAMIENTO DE TUTOR.

> EL TPI ERRÓ AL DESESTIMAR LA PETICIÓN DE INCAPACIDAD Y DESIGNACIÓN DE TUTOR SIN LA DEBIDA CELEBRACIÓN DE UNA VISTA EN SU FONDO PARA AQUILATAR LA PRUEBA SI PROCEDE O NO DECRETAR LA INCAPACIDAD DEL DOCTOR MACHADO ANTE LO DISPUESTO EN EL CÓDIGO CIVIL DEL 2020.

> EL TPI ERRÓ Y ABUSÓ DE SU DISCRECIÓN AL DETERMINAR QUE EL OTORGAMIENTO DE UN PODER DURADERO REEMPLAZA EL PROCEDIMIENTO DE SOLICITUD DE INCAPACIDAD.

> EL TPI ERRÓ Y ABUSÓ DE SU DISCRECIÓN AL IMPONER HONORARIOS DE ABOGADO POR TEMERIDAD AL APELANTE.

Luego de revisar los escritos del peticionario; del Doctor Machado González y de los interventores; Norma Machado Ortiz, Ricardo Felipe Machado Ortiz y Norma Ortiz Colón, así como los documentos que obran en autos, estamos en posición de resolver.

-II-

A.

Como cuestión de umbral, la Regla 52.1 de Procedimiento Civil establece el alcance de la revisión discrecional de las resoluciones u órdenes

---

[4] *Id.,* págs. 5-20.
[5] *Id.,* pág. 1.

interlocutorias emitidas por el Tribunal de Primera Instancia en los siguientes términos:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[…].[6]

**1.**

Rebasado el umbral establecido en la Regla 52.1 de Procedimiento Civil, *supra*, corresponde a este tribunal intermedio determinar si procede revisar la determinación interlocutoria recurrida.

A esos efectos, el auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[7] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[8] Sin embargo, nuestra discreción debe ejercerse de manera

---

[6] Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.
[7] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).
[8] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.

razonable, procurando siempre lograr una solución justiciera.[9]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[10]

Ahora bien, una vez este Foro decide expedir el auto de *certiorari*, asume jurisdicción sobre el asunto en controversia y se coloca en posición de revisar los planteamientos en sus méritos.[11] Sobre el

---

[9] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).
[10] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.
[11] H. A. Sánchez Martínez, *Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo*, San Juan, Lexis-Nexis de Puerto Rico, Inc., 2001, pág. 547.

particular, el Tribunal Supremo de Puerto Rico, en adelante el TSPR, afirmó:

> Asumir jurisdicción sobre un asunto, expidiendo el auto de *certiorari*, ha sido definido como la autoridad en virtud de la cual los funcionarios judiciales conocen de las causas y las deciden. Constituye la facultad de oír y resolver una causa y de un tribunal a pronunciar sentencia o resolución conforme a la ley. Dicha jurisdicción incluye la facultad de compeler a la ejecución de lo decretado y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado.[12]

En fin, al asumir jurisdicción sobre el asunto que tiene ante su consideración mediante la expedición de un auto de *certiorari*, este Tribunal cumple su función principal de revisar las decisiones del foro de instancia para asegurarse que las mismas son justas y que encuentran apoyo en la normativa establecida.[13]

**B.**

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo.[14] Cónsono con dicho propósito, la Regla 10.2 de Procedimiento Civil permite a un demandado presentar una moción antes de presentar su contestación a la demanda, solicitando que se desestime la misma.[15] Específicamente, la Regla 10.2 reconoce varios supuestos bajo los cuales es posible solicitar una desestimación, a saber:

> … (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una

---

[12] *Negrón v. Srio. de Justicia*, 154 DPR 79, 92-93 (2001).
[13] *Id.*, pág. 93.
[14] Véase, R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6ta. Ed., Puerto Rico, *LexisNexis* (2017), sec. 3901, pág. 411; *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022).
[15] Hernández Colón, *op. cit.*, sec. 2601, pág. 305; 32 LPRA Ap. V, R. 10.2; *Casillas Carrasquillo v. ELA*, *supra*.

reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.[16]

En lo aquí pertinente, "al resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifica la concesión de un remedio, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente".[17] A su vez, los hechos bien alegados, deberán ser considerados de la forma más favorable a la parte demandante.[18] En consecuencia, nuestro ordenamiento procesal civil permite al demandado solicitar la desestimación de la reclamación cuando de las alegaciones de la demanda es evidente que alguna de las defensas afirmativas prosperará.[19]

Finalmente, ante una solicitud de desestimación, el tribunal deberá identificar los elementos que establecen la causa de acción y las meras alegaciones concluyentes que no pueden presumirse como ciertas.[20] Específicamente, deberá evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida".[21] De modo

---

[16] Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.

[17] *Costas Elena v. Magic Sport Culinary Corp.*, 2024 TSPR 13, __ DPR __ (2024).

[18] *López García v. López García*, 200 DPR 50, 69 (2018); *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016); *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015). Véase, además, *Eagle Security Police, Inc. v. Efrón Dorado*, 2023 TSPR 5, 211 DPR __ (2023).

[19] *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).

[20] Véase, Hernández Colón, *op. cit.*, sec. 2604, pág. 307; *Ashcroft v. Iqbal*, 556 US 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007).

[21] *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). Véase, además, *Costas Elena v. Magic Sport Culinary Corp.*, *supra*.

que, para prevalecer, el demandado deberá probar que el demandante no tiene derecho a remedio alguno, aun interpretando la demanda de la manera más liberal a su favor.[22]

## C.

La doctrina de cosa juzgada es materia que pertenece al ámbito del derecho sustantivo[23]. Así pues, en nuestro ordenamiento civil, la cosa juzgada tiene su base estatutaria en el Artículo 1204 del Código Civil que establece que "[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron"[24]. Manresa define la doctrina antes citada como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad"[25].

Sobre este particular, el TSPR ha dejado claro que para que la presunción de cosa juzgada surta efecto en otro juicio, "es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los

---

[22] *López García v. López García*, *supra*; *SLG Sierra v. Rodríguez*, 163 DPR 738, 746 (2005). Véase, además, *Cobra Acquisitions, LLC v. Mun. Yabucoa*, 210 DPR 384, 396 (2022).
[23] *Presidential v. Transcaribe*, 186 DPR 263, 279 (2012); *Díaz v. Navieras de P.R.*, 118 DPR 297, 303 (1987).
[24] 31 LPRA sec. 3343. Véase, *Presidential v. Transcaribe*, *supra*, pág. 273.
[25] *Presidential v. Transcaribe*, *supra*; *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 153 (2011); *Parrilla v. Rodríguez*, 163 DPR 263, 268 (2004), citando a J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278.

litigantes y la calidad con que lo fueron"[26]. Su finalidad es evitar que en un pleito posterior se litiguen nuevamente, entre las mismas partes y sobre las mismas cosas y causas de acción, las controversias que ya fueron o pudieron haber sido litigadas y adjudicadas en el pleito anterior[27].

Esta doctrina se fundamenta en consideraciones de orden público, en el interés del Estado en ponerle fin a los litigios y en el propósito de proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial[28]. De este modo, procura garantizar la certidumbre y seguridad de los derechos ya declarados, además de evitar gastos adicionales al Estado y a los litigantes[29].

Cónsono con lo anterior, "[c]uando un litigante articula exitosamente los elementos necesarios para que aplique la doctrina de cosa juzgada, … [e]l efecto inexorable es que la sentencia decretada en un pleito anterior impide que, en un pleito posterior, se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa"[30]. Sin embargo,

---

[26] *Presidential v. Transcaribe*, *supra*, págs. 273.
[27] *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 655 (2013); *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 294 (2012); *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 769 (2003); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 DPR 940, 950-951 (1972).
[28] *Negrón Vélez v. ACT*, 196 DPR 489, 507 (2016); *Parrilla v. Rodríguez*, *supra*, pág. 268.
[29] *Ortiz Matías et al. v. Mora Development*, *supra*, pág. 655; *Worldwide Food Dis., Inc. v. Colón et al.*, 133 DPR 827, 833-834 (1993).
[30] *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 221-222 (2012); *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 151 (2008), citando a, *Méndez v. Fundación*, 165 DPR 253 (2005); *Pagán Hernández v. UPR*, *supra*; *Mercado Riera v. Mercado Riera*, *supra*.

[…] aún estando presente los componentes necesarios para que la doctrina de cosa juzgada surta efecto, hemos sido diáfanos en establecer que la referida figura legal 'no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso'. Es por ello que hemos resuelto que debemos abstenernos de aplicar la doctrina aludida '*cuando al hacerlo se derrotan o se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público*'. A pesar de lo expresado, 'no se favorece el reconocimiento y la aplicación liberal de excepciones a la doctrina de cosa juzgada ante el riesgo de que se afecte el carácter de finalidad de las controversias adjudicadas…' De esta forma, evitamos se propicie la 'relitigación masiva de las controversias judiciales resueltas'[31].

**1.**

En diversas ocasiones el TSPR ha reconocido el impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada[32]. De modo que, al igual que la doctrina de cosa juzgada, el impedimento colateral "tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes"[33]. Ahora bien, el impedimento colateral se distingue de la doctrina de cosa juzgada en que para su aplicación no es necesario que se dé el requisito de identidad de causas[34]. "Esto significa que la razón de pedir que se presente en una demanda no tiene que ser la misma que se presentó en la demanda anterior"[35].

---

[31] *Beníquez et al. v. Vargas et al., supra,* pág. 224. (Énfasis en el original).
[32] *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 469 (2023); *Presidential v. Transcaribe, supra*, pág. 276; *Beníquez et al. v. Vargas et al., supra*, pág. 225.
[33] *Universal Ins. y otros v. ELA y otros, supra; Beníquez et al. v. Vargas et al., supra; Méndez v. Fundación, supra*, pág. 269.
[34] *Presidential v. Transcaribe, supra*, págs. 276-277; *Beníquez et al. v. Vargas et al., supra; SLG Szendrey-Ramos v. Consejo de Titulares, supra.*
[35] *Presidential v. Transcaribe, supra*, pág. 277.

Así pues, el impedimento colateral se activa cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina por una sentencia válida y final, pues tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas[36]. Finalmente, esta modalidad aplica solamente a aquellas cuestiones que en efecto fueron litigadas y adjudicadas[37].

### D.

En nuestro ordenamiento jurídico se presume que la persona natural mayor de edad tiene, para todos los efectos legales, capacidad de obrar por sí misma.[38] Sin embargo, la capacidad puede ser controvertida con una sentencia de incapacitación absoluta o de restricción parcial, por las causas y la extensión que determina la ley.[39] En consideración a lo anterior, para declarar incapaz y nombrar un tutor a una persona adulta, es imperativo rebatir la presunción de capacidad mental suficiente para obrar, regir su persona y administrar sus bienes.[40]

Al limitar la capacidad de obrar de la persona natural, ya sea de forma parcial o absoluta, siempre "procede el nombramiento de un tutor para que le asista en los actos ordinarios de la vida civil y la represente legalmente en las relaciones jurídicas en las que sea parte."[41]

---

[36] *Id.*; *Capó Sánchez v. Srio. de Hacienda*, 92 DPR 837, 838-839 (1965).
[37] *Presidential v. Transcaribe*, *supra*.
[38] *González Hernández v. González Hernández*, 181 DPR 746, 759 (2011); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 157 (2000); *Jiménez v. Jiménez*, 76 DPR 718, 737 (1954).
[39] Art. 100 del Código Civil, 31 LPRA sec. 5601.
[40] *Id*.
[41] Art. 101 del Código Civil, 31 LPRA sec. 5611.

Conforme dispone el Código Civil vigente, la incapacitación absoluta es admisible para:

    (a)    la persona que tiene disminuidas o afectadas permanente y significativamente sus destrezas cognoscitivas o emocionales y tal estado le impide percatarse del contenido y alcance de los actos ordinarios y jurídicos que realiza; y

    (b)    la persona que padece una condición física o mental que le imposibilita cuidar de sus propios asuntos o intereses, mientras se encuentra en este estado.[42]

En lo aquí pertinente, quien tiene restringida su capacidad de obrar por sí misma en los asuntos que afectan sus bienes o sus intereses personales, con las limitaciones que expresamente le impone la ley o la sentencia de incapacitación, es:

[…]

    (c)    la persona con discapacidad física que no puede comunicarse efectivamente por ningún medio, y que requiere asistencia para hacerse entender, para participar consciente o activamente en algún acto jurídico o para consentir expresamente y por escrito a una obligación;

[…][43]

En la medida en que el presunto incapaz carezca de la aptitud para realizar actos jurídicos, por tiempo fijo o indefinido, están facultados para solicitar el procedimiento de incapacitación: el cónyuge, los progenitores, así como "cualquier pariente con plena capacidad de obrar que tenga derecho a sucederle o el defensor judicial que el tribunal designe", y el Ministerio Público.[44]

Ahora bien, la declaración de incapacidad será precedida por un juicio ordinario y expedito, luego de cumplir con las exigencias del debido proceso de

---

[42] Art. 102 del Código Civil, 31 LPRA sec. 102.
[43] Art. 104 del Código Civil, 31 LPRA sec.104.
[44] Art. 110 del Código Civil, 31 LPRA sec. 5631.

ley.[45] Así pues, el tribunal debe recibir el dictamen de uno o de varios médicos, que traten las condiciones físicas, cognoscitivas o emocionales que limitan la capacidad de obrar del alegado incapaz.[46] Además, el tribunal puede pedir y recibir otras pruebas que considere necesarias para hacer su determinación.[47] Luego, si entiende que la persona está realmente incapacitada para cuidar de sí misma y administrar sus bienes, nombrará un tutor.[48]

Finalmente, el Código Civil dispone que el tribunal requerirá un informe sobre las condiciones socioeconómicas del alegado incapaz antes de dictar la sentencia, de imponer las limitaciones especiales que procedan o de nombrar el tutor.[49] También, ordena al tribunal, antes de unir el informe al expediente del caso, a recibir las objeciones oportunas que sobre su contenido presenten las personas interesadas en el proceso de incapacitación.[50]

**E.**

Por otro lado, es norma firmemente establecida que los tribunales apelativos no intervienen con el manejo de los casos por parte del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio

---

[45] Art. 113 del Código Civil, 31 LPRA sec. 5634.
[46] Art. 114 del Código Civil, 31 LPRA sec. 5635.
[47] *Id.*
[48] *González Hernández v. González Hernández*, *supra*, pág. 761.
[49] Art. 117 del Código Civil, 31 LPRA sec. 5642.
[50] *Id.*

sustancial".[51] Conviene destacar que "la discreción se fundamenta [,entre otras,] en el contacto con los litigantes y la prueba que se haya presentado"[52] ante el foro sentenciador. Por esta razón, se presume que el Tribunal de Primera Instancia conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una disposición final.[53]

De modo que, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia salvo que incurra en algunas de las conductas previamente mencionadas y si a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación".[54] Específicamente, el TSPR ha delimitado las instancias en las que un tribunal abusa de su discreción de la siguiente manera:

> [C]uando no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o cuando, [...] [tras] considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[55]

---

[51] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, 2023 TSPR 145, 213 DPR __ (2023); *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 DPR 465, 497 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 276 (2019); *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).
[52] *Citibank v. ACBI et al.*, *supra*, pág. 736.
[53] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Mejías et al. v. Carrasquillo et al*, 185 DPR 288, 306-307 (2012). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*.
[54] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).
[55] *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*. Véase, además, *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 2023 TSPR 65 (2023); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013) (citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)).

**-III-**

A los efectos del resultado alcanzado, discutiremos los señalamientos de error 1 al 4.

Para el peticionario, el TPI incidió al aplicar la doctrina de impedimento colateral por sentencia al caso de epígrafe, porque no se emitió una sentencia final y firme. Además, por la naturaleza dinámica de las controversias en casos de familia, los dictámenes emitidos no son finales y firmes. En su opinión, erró el foro sentenciador al desestimar la Petición en cuestión, bajo la Regla 10.2(5) de Procedimiento Civil, al no considerar como ciertas las alegaciones de la solicitud. Finalmente, se equivocó el TPI al desestimar la solicitud de incapacidad y nombramiento de tutor, sumariamente, es decir, sin celebrar vista evidenciaria.

Por su parte, el Doctor Machado González arguyó que no erró el TPI al desestimar la *Petición de Declaración de Incapacidad y Nombramiento de Tutor*. A su entender, se configuraron las doctrinas de cosa juzgada y de impedimento colateral porque la Petición presenta las mismas alegaciones y la misma prueba médica que se desestimó en el caso Civil Núm. BY2020RF01044 entre las partes. Sostiene, además, que como el peticionario no derrotó la presunción de capacidad del Doctor Machado González, no procedía celebrar una vista evidenciaria. También, opina que la insistencia del peticionario en someter al Doctor Machado González a un procedimiento judicial, constituye una violación a sus derechos fundamentales.

Finalmente, las señoras Norma Machado Ortiz y Norma Ortiz Colón, así como el señor Felipe Machado Ortiz, adoptaron, en esencia, la misma posición que la del Doctor Machado González.

Como cuestión de umbral, está ante nuestra consideración una controversia sobre el estado mental del peticionado. En la medida en que dicho estado está sujeto a cambios, la determinación recurrida es de naturaleza interlocutoria.[56]

Aclarado lo anterior y por tratarse de una decisión judicial en un caso de relaciones de familia, la Regla 52.1 de Procedimiento Civil nos faculta a revisarla. En consecuencia, acogemos el recurso de epígrafe como uno de *certiorari* y bajo dicho parámetro pasamos a adjudicarlo.

De lo anterior se desprenden las siguientes consecuencias.

En general, el estado mental de una persona es una condición dinámica, cambiante, variable, más aún cuando se trata de una persona de edad muy avanzada. Así pues, dicha dimensión del ser humano no se puede aprisionar en el marco rígido del concepto de sentencia y en consecuencia, no es susceptible de la aplicación del concepto de cosa juzgada.

---

[56] En *Figueroa v. Del Rosario*, 147 DPR 121, 128-129 (1998) el TSPR dispuso lo siguiente: "Los casos de familia están permeados del más alto interés público y tienen, además, un carácter sui géneris. En virtud de lo anterior, hemos expresado que las determinaciones de alimentos y de custodia de menores no constituyen propiamente cosa juzgada, ya que están sujetas a revisión judicial, en el tribunal de instancia, si ocurre un cambio en las circunstancias que así lo justifique… En consecuencia, estos dictámenes nunca son estrictamente finales ni definitivos". (Citas omitidas). Véase, además, *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 85-86 (2018); *Machargo Olivella v. Martínez Schmidt*, 188 DPR 404, 415 (2013) (Opinión de conformidad emitida por el Juez Asociado Señor Kolthoff Caraballo a la cual se unieron la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Rivera García); *Cortés Pagán v. González Colón*, 184 DPR 807, 813 (2012).

Tampoco aplica su versión más moderada, es decir, la doctrina de impedimento colateral. Ello obedece a que ni en el caso civil BY2020RF01044, ni en el caso de epígrafe, fue litigado y adjudicado, mediante sentencia final y firme, algún hecho esencial sobre la capacidad del Doctor Machado González para cuidar de sí mismo y administrar sus bienes.

Como si lo anterior fuera poco, en ninguno de los dos casos se ha celebrado un juicio ordinario en el que hayan declarado peritos médicos sobre las condiciones cognoscitivas o emocionales del peticionado. Tampoco se ha pasado prueba sobre la condición socioeconómica del Doctor Machado González. En síntesis, lejos de haber sido adjudicado de forma final, el estado mental actual del peticionado está abierto a dilucidarse.

Por otro lado, asumiendo *in arguendo* que las figuras procesales de cosa juzgada e impedimento colateral por sentencia aplican al caso de autos, estas no son moldes rígidos e inflexibles que determinen de una vez y para siempre cualquier controversia, y menos aun, una de relaciones de familia. Como ha declarado de forma categórica nuestro más alto foro, su aplicación siempre se debe considerar "conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso"[57].

Somos de la opinión, que el TPI erró al no aplicar correctamente el estándar de revisión de la moción de desestimación bajo la Regla 10.2(5) de las de Procedimiento Civil, *supra*. De haberlo hecho,

---

[57] *Beníquez et al. v. Vargas et al.*, *supra,* pág. 224.

habría continuado el trámite de declaración de incapacidad. Veamos.

Si aceptamos como ciertas las alegaciones de la Petición y las consideramos de forma más favorable al peticionario, es forzoso concluir que el señor Machado Ortiz podría tener una reclamación que justificara la concesión de un remedio. Así pues, de la lectura de las alegaciones bien formuladas de la Petición surgen, **en esta etapa de los procedimientos**, interrogantes sobre la naturaleza de la patología del peticionado, su impacto sobre su capacidad cognoscitiva y su facultad para administrar su persona y sus bienes. Del mismo modo existe controversia, **en esta etapa de los procedimientos**, sobre la aptitud de los apoderados para administrar la persona y los bienes del peticionado.[58]

Debemos añadir que coincidimos con la apreciación del peticionario en que incidió el TPI al desestimar la petición de incapacidad y nombramiento de tutor sin celebrar una vista evidenciaria. Así pues, no se puede rebatir la presunción de capacidad de una persona abstrayendo un trámite judicial que garantice, a todos los involucrados, el debido proceso de ley. Por el contrario, dicha tarea judicial requiere la **celebración de un juicio ordinario** en el que, entre otras cosas, se consideren los **dictámenes de diversos médicos, información sobre las condiciones socioeconómicas** del presunto incapaz y cualquier otra **prueba** que el foro sentenciador entienda necesaria para hacer su determinación. Esto,

---

[58] Apéndice del peticionario, págs. 857-865.

sin lugar a dudas, no ha ocurrido en el presente caso.

De lo que sí estamos seguros es de que no se puede mantener la presunción de incapacidad de una persona a base de alegaciones concluyentes, acomodaticias, esquivas e ingenuas de una sola de las partes, en este caso, los apoderados. Menos aún, cuando dicha presunción pretende mantenerse sobre la base de no permitir acceso al peticionado y de ese modo, impedir a otras partes interesadas conocer la veracidad de dichas afirmaciones.

Finalmente, podríamos omitir la argumentación previa de la parte dispositiva de esta sentencia y llegar al mismo resultado adjudicativo, a saber, que no se podía desestimar la Petición en esta etapa tan temprana del procedimiento, que procedía continuar con los procedimientos y que eventualmente había que celebrar el juicio ordinario y expedito que exige el Código Civil. Para ello, basta considerar las expresiones de la única participante en la vista argumentativa, neutral, ajena a este contencioso familiar acrimonioso, a saber, la Procuradora de la Familia. Veamos.

> Sometimos el informe fiscal y ante lo… **la falta de documentos que hacía… que no… que no formaban partes de la petición…**
>
> **Al día de hoy no hemos recibido absolutamente nada. Esa es la realidad en cuanto a la petición.**
>
> […]
> Hay unas partes aquí que están diciendo: "somos partes, tenemos un interés", ¿okay?
>
> **Y esas partes, por otro lado, lo único que piden es: "queremos expresar nuestra posición, porque es no solamente estar aquí y notificarme y que me escuche. ¿Cómo va a escuchar este honorable tribunal si no podemos dar información? ¿Hasta qué punto eso constituye una oportunidad de que se le [*sic*.] de a los**

**hijos en [*sic*.] su debido proceso de Ley, porque no tienen herramientas para expresar ningún tipo de posición ninguno de los interventores, en este momento?**

**Definitivamente, aquí no se ha cumplido con el Informe Fiscal.**

Entonces, en cuanto al impedimento colateral, entendemos que por la jurisprudencia que hemos estado evaluando, veni… varias jurisprudencias que hemos estado evaluando, no es procedente en este momento, en este procedimiento.

**En este procedimiento tenemos ante la consideración del Tribunal una Moción de Desestimación de un lado. Un conflicto espeluznante entre un núcleo familiar que levanta una luz de alerta. Y unos hijos que están pidiendo que para ellos poder expresar su posición pues tienen que tener acceso al señor.**

**Eso es lo que está ante la consideración del Tribunal. En cuanto a mi petición de autori... de incapacidad, en este momento yo no puedo expresar absolutamente nada, porque no se me ha puesto en posición.**

[…][59]

De dichas declaraciones, podemos afirmar sin temor a equivocarnos, que este caso no está maduro para adjudicación en una etapa tan temprana de los procedimientos. Esto es así porque la defensa de impedimento colateral era inaplicable. Faltaba información, no se había cumplido con el Informe Fiscal. El "espeluznante" conflicto familiar "levanta una voz de alerta" y nadie podía expresarse en torno a la capacidad del Doctor Machado González porque no se les ha puesto en posición. De lo anterior, es razonable colegir que el TPI abusó de su discreción al ignorar en la determinación impugnada, sin fundamento para ello, las contundentes declaraciones de la Procuradora de la Familia, apoyadas en el expediente, que a su vez, este tribunal intermedio revisó de forma independiente.

---

[59] Apéndice del peticionario, págs. 165-167. (Énfasis suplido)

## -IV-

Por los fundamentos previamente expuestos, se expide el auto de *certiorari*, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para la celebración de una vista de incapacidad y nombramiento de tutor. En la ejecución de dicha encomienda deberá cumplir estrictamente con las disposiciones aplicables del Código Civil, incluyendo, pero sin limitarse, los Arts. 113, 114 y 117.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones